IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ROBERT H. LEOPARD, JR., | ) | Case No. 12-00113-TOM-7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| USAMERIBANK, d/b/a ALIANT BANK, | ) | |
| | ) | |
| Plaintiff, | ) | A.P. No. 12-00054-TOM |
| vs. | ) | |
| | ) | |
| ROBERT H. LEOPARD, JR. and | ) | |
| WANDA J. LEOPARD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding came before the Court on March 4, 2013, for hearing on the Motion for Summary Judgment filed by defendant Wanda J. Leopard, the Motion for Summary Judgment filed by defendant Robert H. Leopard, the Responses to each Motion filed by plaintiff USAmeriBank, d/b/a Aliant Bank, and the Motion to Strike Plaintiff's Response filed by Robert H. Leopard. Appearing before the Court were James Franklin Walsh, counsel for USAmeriBank, d/b/a Aliant Bank; Brenton K. Morris, counsel for Robert H. Leopard; Bruce Gordon and J. Brannon Maner, counsel for Wanda J. Leopard; and James G. Henderson, chapter 7 Trustee. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(H), (I), (J), and (O).[2] This Court has considered the pleadings, arguments, the evidence, and the law, and finds and concludes as follows.[3]

## **FINDINGS OF FACT**[4]

The facts of this adversary proceeding have been very thoroughly recited in the pleadings and hundreds of pages of exhibits filed by the parties so it is not necessary for the Court to recite them in detail. The basis for this adversary proceeding is a now-defaulted loan ("Arrowwood Loan") in the amount of $2,200,000.00 made on June 18, 2008, from Aliant Bank to Arrowwood Properties LLC, a business owned by Debtor Robert Leopard ("Robert"). The Arrowwood Loan was guaranteed by Robert, but not by his then-wife Wanda Leopard ("Wanda"), who is also a defendant in this action. Aliant had made loans to other businesses owned by or associated with Robert and/or

---

The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. §157(b)(2) provides in relevant part:

> (b)(2)Core proceedings include, but are not limited to–
>  . . .
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
> (I) determinations as to the dischargeability of particular debts;
> (J) objections to discharges;
>  . . .
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship . . . [.]

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

Wanda, and there is some dispute as to whether the loans were cross-collateralized, but there is no dispute that the Arrowwood Loan is the only loan with an outstanding balance. June 18, 2010, was the original maturity date of the Arrowwood Loan, but upon Robert's request Aliant agreed to extend the maturity date until September 18, 2010, with accrued interest to be paid on August 18, 2010. On June 6, 2010, in connection with the extension, Robert provided Aliant with a joint (Robert and Wanda) personal financial statement dated December 31, 2009. Robert executed an Amended Promissory Note on behalf of Arrowwood Properties, LLC on July 19, 2010, and according to Aliant, reaffirmed his guaranty.

Aliant alleges that it did not know at the time it extended the Arrowwood Loan maturity date that Wanda had filed for divorce on April 28, 2010. Wanda and Robert had entered into a property settlement agreement dated April 26, 2010, providing, among other things, that Robert would transfer all of his stock in Leopard Properties, LLC, and all of his interest in the parties' residence, to Wanda. A judgment of divorce incorporating the parties' property settlement agreement was entered on June 29, 2010.

According to Aliant, it would not have extended the maturity date of the Arrowwood Loan had it been aware of Robert and Wanda's pending divorce and the property transfers. Aliant contends that Robert had an obligation to keep Aliant apprised of any changes in his financial position, but instead of complying, Robert provided a joint financial statement that did not disclose the transfers to Wanda. It is Aliant's position that Robert made misrepresentations and suppressed facts that should have been disclosed, and further, that Wanda acted with Robert to defraud the bank.

Robert, however, contends that he did not withhold information from Aliant as he had confessed his marital problems to Daryl Spears, an Aliant loan officer. Furthermore, Robert

3

contends that the joint financial statement was accurate as of December 31, 2009, the date of the statement, and was not represented as being an accurate statement of his finances as of the time he provided it to Aliant.

Robert filed his chapter 7 bankruptcy case on January 9, 2012, and on March 6, 2012, removed to this Court a state court action that had been filed by Aliant against both Robert and Wanda.[5] On April 6, 2012, Aliant filed this adversary proceeding against Robert and Wanda. The actions were consolidated on October 16, 2012. Motions for Summary Judgment were filed by each Robert and Wanda on January 11, 2013, and Aliant filed responses to each on February 1, 2013.

## **CONCLUSIONS OF LAW**

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure,[6] which provides that

> [a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56. The party moving for summary judgment has the burden of demonstrating the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 - 23 (1986). The court, in determining whether the movant met its burden of proof, must consider the evidence and view it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1986). When the movant satisfies

---

[5] AP 12-00040.
[6] Rule 56 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

4

Case 12-00054-TOM    Doc 109    Filed 03/21/13    Entered 03/21/13 11:49:40    Desc Main
Document    Page 4 of 12

its initial burden, the burden shifts to the non-moving party. *Miranda v. B&B Cash Grocery Store Inc.*, 975 F.2d 1518 (11th Cir. 1992). If the non-moving party has the burden of proof on the underlying claims and does not make a sufficient showing on an essential element of her case, there will be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

Aliant has asserted counts for fraudulent misrepresentation, fraudulent suppression, fraudulent transfer under Alabama law, and civil conspiracy against both Robert and Wanda. Aliant has also asserted against Robert counts to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6), and an objection to discharge pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(4). Whether there exists "genuine issues of material fact" that would preclude summary judgment for Robert and/or Wanda requires separate analysis as to each of them. As an initial measure, there is one count against both that may be disposed of without regard to the existence of a genuine issue of material fact.

## FRAUDULENT TRANSFER

Aliant alleges that Robert and Wanda are the transferor and recipient of fraudulent transfers under the Alabama Uniform Fraudulent Conveyance Act, *Ala. Code* § 8-9-1, *et. seq*. Before the Court can reach the merits of the claim, it must first determine if Aliant has standing to pursue alleged fraudulent transfers. In the case of *SouthTrust Bank, N.A. v. Jackson (In re Dur Jac Ltd.)*, 254 B.R. 279 (Bankr. M.D. Ala. 2000) (Sawyer, J.), the court considered under what circumstances a creditor may, for the benefit of the estate, prosecute an adversary proceeding to recover estate property. The court recognized that it is the trustee's right to pursue recovery; however, a creditor

5

may be allowed to pursue an action in the name of the debtor but "'it would have to convince the court that the [trustee] was shirking his statutory responsibilities.'" *Dur Jac Ltd.*, 254 B.R. at 285 (*quoting In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202-03 (7th Cir. 1988)). According to the four-part test adopted by the court, a creditor may be allowed to bring such an action if the creditor:

> 1) has alleged a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court;
> 2) has made a demand on the debtor-in-possession to file the avoidance action;
> 3) the demand has been refused; and
> 4) the refusal is unjustified in light of the statutory obligations and fiduciary duties of the debtor-in-possession in a chapter 11 reorganization.

*Dur Jac Ltd.*, 254 B.R. at 285 (citation omitted). *Dur Jac Ltd.* was a chapter 11 case in which a creditor sought to pursue what it believed to be a fraudulent transfer after the debtor-in-possession decided not to do so. In a subsequent case, *In re Clark*, 374 B.R. 874 (Bankr. M.D. Ala. 2007), Judge Sawyer was called upon to determine whether a creditor could pursue such an action in a chapter 7. Judge Sawyer made clear at the outset that the chapter 7 trustee has the exclusive right to prosecute a fraudulent transfer action. *Clark*, 374 B.R. at 876 - 77. Referring to *Dur Jac Ltd.*, Judge Sawyer pointed out that he had previously determined a creditor could pursue a fraudulent transfer action "under the appropriate circumstances." *Clark*, 374 B.R. at 877. Judge Sawyer concluded that it would not be appropriate under the circumstances to allow the creditor to pursue such an action, since the chapter 7 trustee had inexplicably agreed to allow the creditor to prosecute the action and retain the lion's share of the recovery instead of the estate. *Id*.

At the hearing on the Motions for Summary Judgment counsel for Aliant represented that there had been discussions with the chapter 7 Trustee and/or the Trustee's counsel regarding the Trustee's intent to pursue a fraudulent conveyance action, but that the Trustee never informed Aliant

6

of his decision. There is no evidence before the Court showing that Aliant has made a formal demand on the Trustee to pursue a fraudulent conveyance action and no evidence that the Trustee has refused to do so.[7] Furthermore, there is no evidence that the Trustee should have pursued this action. In fact, the Trustee, who is very experienced and highly reliable, has not filed his final report. Aliant cannot meet the four-part test set out in *Dur Jac Ltd.*; thus, both Robert and Wanda are entitled to summary judgment on this count.

## ALIANT'S REMAINING COUNTS AGAINST WANDA

Aliant's remaining counts against Wanda are ones for fraudulent misrepresentation, fraudulent suppression, and conspiracy. In the Motion for Summary Judgment filed by Wanda and in the Response filed by Aliant, both agree that a duty to disclose is an element of a fraudulent suppression claim. It is undisputed that Wanda is not an obligor or a guarantor of the Arrowwood Loan, nor did she sign any loan documents. Despite this, Aliant points out that Wanda was the recipient of Robert's transfer of Leopard Properties, LLC and his interest in the parties' residence, and alleges the transfer was made to prevent it from reaching those assets to satisfy the Arrowwood Loan. Regardless of whether Aliant is correct or not, the transfer from Robert to Wanda did not impose any obligation on Wanda to make disclosures to Aliant. Therefore, Wanda is entitled to summary judgment on the fraudulent suppression count.

In her Motion for Summary Judgment Wanda claims that there must be a duty to disclose in order to establish fraudulent misrepresentation. This Court has already concluded that Wanda had no duty to disclose. In addition, to succeed on a count for fraudulent misrepresentation Aliant would

---

[7] The chapter 7 Trustee may still be deciding whether or not pursuit of any alleged fraudulent transfers would be in the best interests of the estate.

7

have to show that Wanda made a false representation. Wanda asserts that she made no representations to Aliant at all. In its Response to Wanda's Motion for Summary Judgment, Aliant identifies several alleged misrepresentations by Robert but none attributable to Wanda; in fact, Aliant states "Defendant [Wanda] was as much a part of these misrepresentations as if her own lips were moving and her own hand signed the loan documents." (Doc. 81, Response to Wanda's Motion for Summary Judgment, part II.). Wanda is not liable for any misrepresentations that Robert, and not she herself, allegedly made. Wanda is entitled to summary judgment as to the fraudulent misrepresentation count.

Aliant asserts that Wanda and Robert conspired to keep their assets out of Aliant's reach. "Civil conspiracy is a combination of two or more persons to accomplish an unlawful end (by civil law standards) or to accomplish a lawful end by unlawful means." *Edison v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988). The transfers about which Aliant complains were made in accordance with Wanda and Robert's divorce settlement agreement. In support of her Motion for Summary Judgment Wanda has provided expert reports (from a certified public accountant and a divorce attorney) indicating that the settlement agreement was fair, reasonable, and equitable, and that Robert had received a reasonably equivalent value in exchange for the assets awarded to Wanda. Aliant has not provided sufficient evidence to overcome that provided by Wanda. There is no evidence that Wanda conspired with Robert, or that they would have divided their assets differently if not for Aliant. Wanda is entitled to summary judgment on the conspiracy count.

**ALIANT'S REMAINING COUNTS AGAINST ROBERT**

Summary judgment has been granted in favor of Wanda as to the conspiracy count, and Aliant has alleged no one else with whom Robert could have conspired. Robert is also entitled to

8

summary judgment on the conspiracy count.

The remaining counts against Robert are for fraudulent misrepresentation, fraudulent suppression, objection to the dischargeability of a debt pursuant to §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(6), and objection to discharge pursuant to §§ 727(a)(3) and 727(a)(4). Some material facts are clearly in dispute as to each of these counts as noted in the following paragraphs.

*Fraudulent misrepresentation and fraudulent suppression*. Fraudulent misrepresentation is a false representation of a material fact, upon which the plaintiff reasonably relied, and as a result suffered damages. *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003). Fraudulent suppression is "[s]uppression of a material fact which the party is under an obligation to communicate." *Ala. Code* § 6-5-102. Central to Aliant's fraudulent misrepresentation and omission arguments is the joint financial statement dated December 31, 2009. Aliant contends Robert had reaffirmed that the joint financial statement represented his financial condition as of the time the Arrowwood Loan maturity date was extended. In contrast, Robert asserts that the joint financial statement was an accurate statement of his finances as of December 31, 2009, and that he never represented otherwise. Aliant also contends that Robert had a duty to disclose changes in his financial condition - for example, his divorce from Wanda and the resulting property transfers. Robert however asserts that Aliant loan officer Daryl Spears was aware of his marital trouble and the impact it could have on his finances.

*Exception to discharge pursuant to §§ 523(a)(2)(A) and (B)*. Both § 523(a)(2)(A) and (B) provide that a debt "for money, property, services or an extension, renewal, or refinancing of credit" may be excluded from a debtor's discharge under certain circumstances; § 523(a)(2)(A) addresses those debts obtained under "false pretenses, a false representation, or actual fraud, other than a

9

statement respecting the debtor's . . . financial condition" while § 523(a)(2)(B) pertains to those obtained by the use of a materially false written statement regarding the debtor's financial condition, on which the debtor made with the intent to deceive and the creditor reasonably relied. For either §§ 523(a)(2)(A) or (B) to apply, the debt must have been incurred through "an extension, renewal, or refinancing of credit." Robert contends that the agreement to extend the due date of the Arrowwood Loan is not the type of "extension, renewal, or refinancing" addressed by § 523(a)(2), while Aliant asserts that its forbearance of its rights was an extension of credit for purposes of §523(a)(2).

*Exception to discharge pursuant to § 523(a)(6)*. A debt may be excluded from discharge pursuant to Section § 523(a)(6) if the debt was incurred in connection with a "willful and malicious injury by the debtor to another entity or to the property of another entity." Part of the proof necessary to establish nondischargeability under § 523(a)(6) is that the debtor either "wants to cause the consequences . . . or believes that consequences are substantially certain to follow the act." *Jones v. Holmes (In re Holmes)*, AP No. 11-00391, 2012 WL 2359909, at *3 (Bankr. N.D. Ala. 2012) (*citing Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir. 1995)). Robert contends that there is no evidence of willful or malicious conduct on his part that resulted in a loss to Aliant, but Aliant points to his alleged misrepresentations and suppressions, as well as the transfer of property to Wanda allegedly made to prevent Aliant from collecting on its debt, as evidence of Robert's willful and malicious conduct.

*Denial of discharge pursuant to §§ 727(a)(3) and (a)(4)*. Sections 727(a)(3) and 727(a)(4) both provide that the debtor will be denied a discharge altogether if the creditor proves the elements of those subsections. Discharge can be denied under § 727(a)(3) if the debtor concealed, destroyed,

10

falsified, or failed to keep records from which his financial condition could be ascertained. Aliant claims that there are no documents evidencing Wanda's ownership interest in Leopard Properties, LLC, and no documents that would explain either Robert's valuation of certain assets on his schedules or the discrepancies as to his ownership interest in those assets. Discharge can be denied under § 727(a)(4) if "the debtor, knowingly and fraudulently, in or in connection with the case" made a false oath, presented a false claim, offered or attempted to obtain money for acting or forbearing to act, or withheld any recorded information or records relating to the debtor's property or financial affairs from an officer of the estate. Aliant asserts that Robert did not disclose in his schedules, among other things, his interest in Battle Homes, LLC, or his interest in a Chevrolet Corvette race car. Robert admits he did not disclose his interest in Battle Homes, LLC, but maintains that his interest in the company is minimal and his nondisclosure of the interest unintentional.[8] As to the Corvette race car, Robert contends that he had transferred ownership of the car to David Leonard in payment for repairs Leonard had made to it.

The factual disputes identified here are by no means the only ones at issue, but they are enough to preclude summary judgment. Therefore, Robert's Motion for Summary Judgment is due to be denied as to the counts for fraudulent misrepresentation, fraudulent suppression, determination as to the dischargeability of a debt pursuant to §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(6), and objection to discharge pursuant to §§ 727(a)(3) and 727(a)(4).

## **CONCLUSION**

The counts against Robert and Wanda for fraudulent transfer are due to be dismissed since

---

[8] Robert has amended Schedule B to disclose a 1% ownership interest in Battle Homes LLC.

11

Aliant does not have standing to pursue any such claims. The fraudulent misrepresentation, fraudulent suppression, and conspiracy counts against Wanda are due to be dismissed because Wanda has established there are no issues of material fact to be decided at trial. The conspiracy count against Robert is likewise due to be dismissed. Aliant is entitled to proceed to trial as to the remaining counts against Robert because there are issues of material fact that must be resolved.

It is therefore ORDERED, ADJUDGED, and DECREED that the Motion to Strike Plaintiff's Response is DENIED.

It is FURTHER ORDERED, ADJUDGED, and DECREED that the Motion for Summary Judgement filed by Wanda Leopard is GRANTED as to all counts.

It is FURTHER ORDERED, ADJUDGED, and DECREED that the Motion for Summary Judgement filed by Robert Leopard is GRANTED as to counts Three and Four, and DENIED as to counts One, Two, and Five.[9]

Dated: March 21, 2013

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

xc: James Franklin Walsh
    Brenton K. Morris
    Bruce Gordon
    J. Brannon Maner
    James G. Henderson

---

[9] Aliant's original complaint did not include a count to deny Robert a discharge pursuant to § 727(a)(4). Robert filed his Motion for Summary Judgment before Aliant amended its complaint to include this count (Count Six). Thus, summary judgment as to Count Six is not before the Court.